UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DORIS K. DITTRICH,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

Case No. 1:14-CV-1199

HON. ROBERT J. JONKER

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Doris Dittrich seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.

*See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 40 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 10, 42.)  She completed the twelfth grade and was previously employed as a childcare worker, bartender, waitress, and chore provider. (Tr. 42, 75–76.)  Plaintiff applied for benefits on April 23, 2011, alleging that she had been disabled since November 1, 2009, due to right leg injury and recent surgery, high blood pressure, asthma, and mental problems. (Tr. 129, 143, 157–58,

229–37.) Plaintiff's applications were denied on September 19, 2011, after which time she requested a hearing before an ALJ. (Tr. 159–68.) On March 11, 2013, Plaintiff appeared with her counsel before ALJ JoErin O'Leary for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 36–80.) That same day Plaintiff amended her onset date to November 1, 2011.[1] (Tr. 251.) In a written decision dated May 3, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 10–35.) Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 1–5.) Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R.

---

[1] Plaintiff had previously applied for DIB and SSI on January 28, 2010. Her claims were denied by an ALJ on March 18, 2011. (Tr. 106–23.)

[2]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

§§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ O'Leary determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 15.) At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) chronic right knee pain and residual ligament insufficiency status post ACL reconstruction; (2) chronic sinusitis; (3) headaches; (4) hypertension; (5) obesity; (6) anxiety; (7) major depressive disorder; and (8) schizophrenia. (Tr. 15.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 16–19.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must be able to alternate to standing for five minutes after every thirty to forty-five minutes of sitting. The claimant cannot push or pull with her right lower extremity. Furthermore, the claimant cannot climb ladders or scaffolds. The claimant must also avoid concentrated exposure to dusts, odors, fumes, pulmonary irritants, unprotected heights, and moving mechanical parts. Additionally, the claimant is limited to performing simple, routine, repetitive tasks and making simple work-related decisions. The

claimant can have no more than occasional interaction with the general public. (Tr. 19.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (Tr. 27.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 28,100 jobs in the state of Michigan as a light assembler, packager, and machine tender that an individual similar to Plaintiff could perform. (Tr. 76–77.)   This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any point from November 1, 2011 (the amended alleged onset of disability) through May 3, 2013 (the date of the decision).  (Tr. 29.)

### DISCUSSION

Plaintiff's statement of errors presents the following claims of error:

1. The ALJ committed reversible error by concluding that Plaintiff could perform light work;

2. The ALJ committed reversible error by failing to properly weigh and consider the evidence; and

3. The ALJ committed reversible error by failing to properly consider the GAF scores in this case.

(ECF No. 13, PageID.814.) The Court will consider the issues below.[3]

### A. A Sit/Stand Option Does Not Preclude an RFC of Light Work.

Plaintiff first claims that the ALJ's determination Plaintiff can perform an RFC of limited light work is unsupported by substantial evidence because Social Security Rulings do not allow for a sit/stand option for light work. The Court is not persuaded.

A plaintiff's residual functional capacity (RFC) represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96–8P, 1996 WL 374184 at *1 (S.S.A, July 2, 1996); *see also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 116 (6th Cir., Nov. 18, 2010). "To determine the physical exertion requirements of work in the national economy" the Social Security Administration "classif[ies] jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567.

 "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.*"*Id.* (emphasis added); *see also* Social Security Ruling 83–10, 1983 WL 31251 at *6 (S.S.A, 1983); *Van Winkle v. Comm'r of Soc. Sec.*, 29 F. App'x 353, 357 (6th Cir., Feb. 6, 2002).

---

[3] The Court notes that Plaintiff's counsel has failed to follow the Court's notice of February 3, 2015, regarding page lengths for briefs. Counsel submitted a brief twenty-five pages in length, exceeding the Court's direction that "[i]nitial briefs may not exceed 20 pages without leave of court." (ECF No. 8, PageID.786.) Plaintiff's counsel should be aware that future briefs which exceed page limits without leave of court may be stricken.

Plaintiff bases her claim on Social Security Ruling 83–10 which expands on the above definition of light work. It is true, as Plaintiff points out, that light work generally involves "prolonged standing or walking" and that "most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task." Social Security Ruling 83–10, 1983 WL 31253 at *4 (S.S.A., January 1, 1983). According to Plaintiff, these statements found in SSR 83–10 are incompatible with her RFC that allowed for a sit/stand option. (ECF No. 13, PageID.814.) Reading the ruling as a whole, however, the Court finds the ALJ did not err.

SSR 83–10 expressly contemplates situations where, as here, a Plaintiff is given a RFC for limited light work with a sit/stand option and provides guidance for ALJs:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferrng work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base.

1983 WL 31253 at *4. The last line quoted above is illustrative. In appropriate cases where a claimant has only exertional limitations, the Medical–Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Grids") resolve the issue of capability to do other work. However if, as in this case, a plaintiff's RFC does not coincide with the definition of one of the ranges of work because the claimant has nonexertional limitations that may erode the occupational base, the Commissioner uses the Grids only as a framework for decision making and relies on other vocational evidence to determine whether the claimant can still do a significant number of jobs with those nonexertional limitations. *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990). SSR 83–10's direction is no different: in cases in which a sit/stand option is included in a Plaintiff's RFC, the ALJ is directed to rely on additional evidence outside of the Grids. The ALJ thus correctly followed these rulings when she sought and received the opinion of a VE at the administrative hearing. As noted above, the VE identified 28,100 jobs in the state of Michigan that Plaintiff could perform. (Tr. 76–77.) This was sufficient to satisfy the Commissioner's burden at step 5. Accordingly, Plaintiff's first claim fails.

### B. The ALJ Did Not Err in Considering the Medical Opinions.

Plaintiff argues that the ALJ gave insufficient weight to the opinions of a consultative examiner, Mary Cullen-Ott, M.A., a limited licensed psychologist; and her treating psychiatrist, Dr. Curtis Cummins, M.D. (ECF No. 13, PageID.816–18.) Plaintiff also argues that the ALJ gave too much weight to the opinions of Dr. Edward Brophy, D.O, and Dr. Joe DeLoach, Ph.D., non-examining Disability Determination Service medical and psychological consultants. (*Id.*).

1.  *Ms. Cullen-Ott*

Ms. Cullen-Ott conducted a consultative examination of Plaintiff on August 15, 2011. (Tr. 539–44.) Plaintiff drove herself to the appointment and appeared on time. (Tr. 539.) Plaintiff was "friendly and cooperative." Her "reality contact" was intact, but her ability for insight appeared limited. (Tr. 541.) Ms. Cullen-Ott diagnosed Plaintiff with Major Depressive disorder as well as Anxiety Disorder, and assigned a GAF of 49. (Tr. 543.) Ms. Cullen-Ott then stated:

> Based on this examination, Ms. Dittrich would be able to understand and complete simple instructions but may have more difficulty with complex instructions due to possible sub par cognitive ability. Her ability to interact and communicate effectively with co-workers, authority figures, or the public is adequate. Judgment and problem solving are limited. Her ability to manage a normal amount of stress may be diminished by anxiety and depression.

(Tr. 543.) Ms. Cullen-Ott further opined that Plaintiff would be able to manage funds. (Tr. 543.)

The opinions of a consultative examiner are not entitled to any particular weight. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). Rather the weight to be given the opinion is evaluated under the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). The ALJ gave Ms. Cullen-Ott's opinion "some weight." (Tr. 25–26.) In doing so, the ALJ noted that Ms. Cullen-Ott's opinion "appeared to rely at least somewhat on the claimant's subjective report of symptoms and limitations, and seemed to uncritically accept as true most, if not all, of what the claimant reported" which undermined the weight of that opinion. (Tr. 26; *see* 20 C.F.R. §§ 404.1527(c) and 416.927(c) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.")) The lack of objective findings suggests that Ms. Cullen-Ott relied primarily on Plaintiff's self-reported symptoms, which, given the

9

ALJ's findings concerning Plaintiff's credibility, was properly discounted. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (ALJ acted within his discretion in discounting medical opinions that were solely based on claimant's self-reported symptoms, when the ALJ found claimant not credible.); *Taylor v. Comm'r of Soc. Sec.*, No. 1:14-CV-294, 2015 WL 1310802, at *4 (W.D. Mich. Mar. 24, 2015). Accordingly, Plaintiff's claim of error regarding Ms. Cullen-Ott is denied.

### 2. Dr. Cummins

On June 28, 2012, Dr. Cummins filled out a worksheet regarding Plaintiff's Mental RFC. (Tr. 647–49.) Dr. Cummins checked boxes corresponding to his opinion regarding Plaintiff's ability to perform in the areas of making occupational adjustments, making performance adjustments, making personal/social adjustments, and of Plaintiff's functional limitations. Regarding Plaintiff's ability to make occupational adjustments, Dr. Cummins stated that Plaintiff was moderately to markedly impaired in her ability to relate to co-workers, deal with the public, interact with supervisors, and function independently, and was otherwise only mildly limited. (Tr. 647.) Regarding performance adjustments, Dr. Cummins believed Plaintiff was moderately to markedly limited in her ability to understand, remember, and carry out detailed but not complex instructions, and mildly to moderately limited in her ability to do so with simple job instructions. (Tr. 647–48.) As for making personal and social adjustments, Dr. Cummins thought Plaintiff was mildly to moderately limited in her ability to maintain her personal appearance, behave in an emotionally stable manner, and relate predictably in social situations. (Tr. 648.) Finally, Dr. Cummins stated that Plaintiff would be mildly limited in her activities of daily living, moderately limited in her ability to maintain social functioning, and moderately to markedly limited in maintaining concentration, persistence or pace. (Tr. 648.) Dr. Cummins concluded:

> Ms. Dittrich began developing symptoms of schizophrenia in late 2010–early 2011, though there were earlier symptoms of paranoid delusions evident in 2009 by her report. Her prognosis is guarded and she has been fully compliant in terms of attending her appointments and in taking prescribed medications. There are no concerns regarding addition or substance abuse.

(Tr. 649.)

The ALJ assigned Dr. Cummins' opinion "little weight" noting that "it is without substantial support from the medical evidence and the record as a whole, including Dr. Cummins' own treatment notes, which suggest that the claimant's mental health symptoms have gradually improved with consistent treatment and medication usage." (Tr. 26.) Plaintiff argues that in this, the ALJ failed to provide "good reasons" for discounting the opinion of Dr. Cummins.

It appears undisputed that Dr. Cummins qualifies as a treating physician. The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.

*See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The record shows that Plaintiff first met with Dr. Cummins on January 19, 2012. She was on time for her appointment, was casually dressed, and groomed. (Tr. 633.) Dr. Cummins thought her cooperative and pleasant. She had normal speech and good eye contact. (Tr. 634). Plaintiff reported she was experiencing both auditory and visual hallucinations roughly twice a week, and that they caused her to be easily distracted. (Tr. 633.) Plaintiff believed that her family members were committing various acts against her since the birth of her son. (Tr. 633.) Plaintiff also reported that she was depressed, and that it had worsened over the last three years. This caused her to experience insomnia, and Plaintiff stated she only slept for five hours a night. (Tr. 633.) Dr. Cummins assessed Plaintiff with paranoid schizophrenia, prescribed the drug Abilify, and told Plaintiff to follow up in a month. (Tr. 634–35.)

A month later on February 15, 2012, Dr. Cummins believed Plaintiff's mood was slightly dysthymic (or depressed). Plaintiff stated however, that she was "alright" and Dr. Cummins noted she was "able to make light of her illness with humor." (Tr. 613.) Plaintiff reported she continued to experience visual hallucinations, though she believed she was less paranoid than she had been, and stated she believed she had schizophrenia. (Tr. 613.) Dr. Cummins found that she had a "good insight" into her illness, and that her thoughts were clear, logical, and goal directed. Plaintiff's dosage of Abilify was increased and she was told to return for follow-up in a month. (Tr. 613.)

On March 13, 2012, Plaintiff reported continued improvement. She stated she was happier, thinking more clearly, and thought that her family members were coming to visit her less. (Tr. 617.) She stated, however, that she still believed they were tampering with her car. (Tr. 617.) Dr. Cummins again found Plaintiff's thoughts to be clear, logical, and goal directed, and increased the dosage of her Abilify. (Tr. 617.) Plaintiff next met with Dr. Cummins on May 1, 2012. She reported continued auditory and visual hallucinations. She believed that her family members were outside her house, tampered with her car, and stepped on her dog. (Tr. 659.) Plaintiff stated she had subsequently changed five locks. (Tr. 659.) Nonetheless, she believed that Abilify was helping, as it "helps control my thoughts" and allowed her to take care of her son. (Tr. 659.) Dr. Cummins again found Plaintiff's thoughts to be clear, logical, and goal directed, but found that "[s]he continues to have paranoid delusions and auditory hallucinations despite maximum dose of Abilify which is somewhat affective, though continues with significant symptoms of psychosis." (Tr. 659.) Plaintiff remained on the maximum dosage of Abilify and she was started on Latuda. (Tr. 659.)

A month later, Plaintiff reported that she was having less hallucinations and had improved concentration, however she continued to experience both auditory and visual hallucinations as well as her paranoid beliefs. (Tr. 656.) Dr. Cummins took Plaintiff off Abilify and increased the dosage of Latuda. (Tr. 656.) On August 1, 2012, Plaintiff reported that the Latuda was helping, and that she had less frequent auditory and visual hallucinations, though she was still experiencing both. (Tr. 755.) Plaintiff also reported that she was sleeping better, and Dr. Cummings increased her dosage of Latuda. (Tr. 755.) On October 29, 2012, Plaintiff reported that she was "better able to ignore" her hallucinations and beliefs regarding her family, but she continued to report that she believed her family wanted to "cut into my cement" and that "they want animals to get under my house." Dr. Cummings again increased the dosage of Latuda. (Tr. 751.)

The last visit with Dr. Cummins that appears in the record occurred on January 28, 2013. She reported "resolution" of her visual hallucinations, and improved symptoms regarding her auditory hallucinations. Plaintiff also reported improvement with her ability to ignore her thoughts that her family was harassing her. (Tr. 746.) She reported she had improved concentration, and was sleeping well. (Tr. 746.) Dr. Cummins kept Plaintiff on her current dosage of medication.

It is evident that with medication, Plaintiff's schizophrenia symptoms were less severe. The record also demonstrates, however, that Plaintiff continued to have paranoid thoughts regarding her family members, as well as experience hallucinations. Plaintiff's testimony at the hearing shows that by the time of the ALJ's decision, these beliefs had still not completely resolved. (Tr. 45–54.) Plaintiff's Reply Brief notes that in a subsequent application, Plaintiff was awarded benefits and argues that in doing so, the Commissioner has "tacitly acknowledged the lack of evidence" to support the ALJ's decision in this case. (ECF No. 19, PageID.843.) Clearly Plaintiff

14

continues to suffer from severe mental impairments. But it is beyond the role of the Court to consider new evidence that was not in front of the ALJ. Rather the Court must determine whether substantial evidence supports the ALJ's decision that is currently in front of the Court. This is an "extremely deferential" standard. *Berishaj v. Gonzales*, 238 F. App'x 57, 63 (6th Cir. 2007).

Under such a standard, the Court finds that the ALJ has provided good reasons, supported by substantial evidence, for concluding Plaintiff was not as limited as Dr. Cummins alleged, despite her impairments. Dr. Cummins' treatment notes consistently demonstrate that Plaintiff is not as impaired as he stated she was in his later assessment. A review of the treatment notes show that Plaintiff is fully compliant with her medication, and that with the medication she is able to better concentrate and care for her child. The medications allow her to better ignore her paranoid thoughts, and experience fewer hallucinations. Dr. Cummins found Plaintiff to be pleasant, able to make jokes, and to have clear, logical, and goal oriented thoughts. All this provides substantial evidence for the ALJ's decision. Accordingly, Plaintiff's claim of error regarding Dr. Cummins is rejected.

### 3. *Non-examining Reviewers*

Plaintiff concludes this claim of error by arguing the ALJ erred in giving greater weight to the opinions of Dr. Edward Brophy, D.O, and Dr. Joe DeLoach, Ph.D., than the opinions of the medical providers who had examined Plaintiff. (ECF No. 13, PageID.817.) Plaintiff is correct that "as a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a 'nonexamining source')." *Gayheart*, 710 F.3d at 375. However, this is not a rigid rule. Rather, "[a]ny record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not

well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012).

Medical opinions are evaluated for their consistency with the record as a whole, regardless of their source. 20 C.F.R. § 404.1527(c)(4); *see also, Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999). An ALJ may rely on the opinions of the state agency physicians who only reviewed a plaintiff's file. *See* 20 C.F.R. § 404.1527(e)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). Where a treating physician's opinion is not supported by objective medical facts, a non-examining physician's opinion may be accepted over it "when the non-examining physician clearly states the reasons for his differing opinion." *Carter v. Comm'r of Soc. Sec.*, 36 F. App'x 190, 191 (6th Cir. 2002). Here, the ALJ found Dr. Cummins' opinion was inconsistent with his treatment notes, while the opinions of the non-examining reviewers were consistent with the record as a whole. Thus, the ALJ did not error in assigning greater weight to the opinions of Dr. Brophy and Dr. DeLoach than Dr. Cummins and Ms. Cullen-Ott.

### C. GAF Scores

In assessing Plaintiff's mental RFC, the ALJ considered several of the GAF scores in the record. The ALJ assigned little weight to the scores, however, because:

> they are inconsistent with the medical evidence and the record as a whole, including the mental status examination findings and the claimant's reported activities of daily living.  Moreover, GAF scores are a highly subjective and non-standardized measure of symptom severity that capture an individual's level of functioning of symptoms only at the time of evaluation.

(Tr. 26.) Plaintiff argues that the ALJ committed reversible error by failing to properly consider Plaintiff's GAF scores and erroneously stating that Plaintiff's scores ranged from 49 to 55 when Plaintiff in fact had a score of 47 as well. (ECF No. 13, PageID.818.)

GAF scores are subjective rather than objective assessments and are not entitled to any particular weight. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006); *see also Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) ("no particular amount of weight is required to be placed on a GAF score") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)); *Taylor v. Comm'r of Soc. Sec.*, No. 1:11–cv-1308, 2013 WL 1305291, at *9 (W.D. Mich. Mar. 28, 2013) ("The ALJ is not required 'to put stock in a GAF score in the first place.'") (quoting *Kornecky*, 167 F. App'x at 503 n.7); *Edwards v. Comm'r of Soc. Sec.*, 654 F. Supp. 2d 692, 696 n. 3 (W.D. Mich. 2009) (collecting cases). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7.

The fourth edition of the Diagnostic and Statistical Manual of Mental Disorders provides an explanation of the GAF scale, but indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511; *see Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011). "Significantly, the SSA has refused to

endorse the use of the GAF scale." *Bennett v. Comm'r of Soc. Sec.*, No. 1:07–cv–1005, 2011 WL 1230526, at *3 (W.D. Mich. Mar. 31, 2011). GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Social Security Admin.*, 211 F. App'x 411, 415 (6th Cir. 2006); *see Richardson v. Comm'r of Soc. Sec.*, No. 1:12–cv–776, 2013 WL 5211245, at *5 (W.D. Mich. Sept.16, 2013).

Plaintiff ignores the controlling authority from the Sixth Circuit and the decisions of this court in favor of a decision from the Eastern District which is not controlling or remotely analogous. (ECF No. 13, PageID.818.) (citing *Boruff v. Astrue*, 648 F. Supp. 2d 932 (E.D. Mich. 2009)). In *Boruff*, Judge Nancy Edmunds considered a child's claim of disability stemming from his attention deficit hyperactivity disorder (ADHD). *Boruff*, 648 F. Supp. 2d at 935.  Judge Edmunds found that on the administrative record before her, the ALJ's stated reason for rejecting the opinion of a consultative psychologist was not persuasive. *Id.* at 943–44. The ALJ had rejected the psychologist's opinion giving the claimant a GAF score of 50 on the ground that it "was not consistent with the medical evidence." *Id.* at 943. Judge Edmunds determined that this finding was not supported by substantial evidence because the underlying record showed that "five different experts," including a "treating psychiatrist" and non-treating psychiatrists, had supplied virtually identical GAF scores. *Id.* at 943–44.

Here, while the ALJ may have failed to consider the lower GAF score, it is at most harmless error. (Tr. 26, 601.) This is true for a number of reasons.  First of all, the most recent edition of the Diagnostic and Statical Manual of Mental Disorders no longer contains the GAF scale. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013) (noting that it was recommended "that the GAF be dropped from [the manual] for several reasons, including its

conceptual lack of clarity . . . and questionable psychometrics in routine practice"). Moreover, as set forth in the previous edition, a GAF score of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000). Because the omitted GAF score of 47 is still within this scale, Plaintiff has not shown how she was prejudiced by the omission.

Finally, the ALJ's decision to give little weight to the GAF scores is supported by substantial evidence. As noted above, Plaintiff's ability to disregard her paranoid thoughts and hallucinations improved when taking medication. Plaintiff was also able to complete a wide variety of activities of daily living, which is inconsistent with the description contained in the GAF scores Plaintiff was assessed at. For example, Plaintiff stated that she cares for her mother, and she makes meals, does the laundry and dishes. She keeps up with her hygiene, and cares for a dog. Plaintiff can drive, go shopping and keep track of her money. She attends church, and goes out for lunch. Plaintiff also stated she had no problem getting along with family, friends, and co-workers. (Tr. 290–94, 541.) All this is inconsistent with the severe impairment in functioning corresponding to Plaintiff's GAF scores. Accordingly, the ALJ did not err in assigning little weight to Plaintiff's GAF scores, and Plaintiff's claim of error is rejected.

### CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.

Dated:     January 25, 2016            /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE